### BOUND v. SOUTH CAROLINA RY. CO. et al.

(Circuit Court of Appeals, Fourth Circuit. October 4, 1893.)

#### No. 48.

**1. MORTGAGES—FORECLOSURE—PLEADING—ESTOPPEL.**

The owner of second consolidated railroad mortgage bonds filed a foreclosure bill, and, according to the prayer thereof, the court appointed a receiver, required all lienholders to come into the cause, and enjoined them from asserting their claims in any other case. All the lien claimants, including the holders of prior and subsequent mortgage bonds, filed cross bills, asking affirmative relief and the sale of the property. For nearly three years the court dealt with the suit as a consolidated case, and finally decreed a sale free of all liens. *Held*, that it was too late for any party to object to the decree that it was not in conformity to the prayer of the original bill, or to contend that because the lienors had filed cross bills, instead of obtaining leave to file original bills, the pleadings were irregular.

**2. SAME—PETITION TO REDEEM—PREREQUISITES.**

In a foreclosure proceeding, a petition of junior lienors to be allowed to redeem prior mortgages should contain a formal offer to pay whatever sums the petitioner admits to be due; and a prayer that the prior mortgagees be required to deposit their securities in court, in order that the petitioner "may have the privilege of redeeming" them, is insufficient.

**3. SAME.**

The trustees of a first consolidated railroad mortgage, having declared the mortgage due before maturity for default in interest, pursuant to a provision thereof, filed a cross bill in a pending foreclosure suit, brought by second consolidated mortgage bondholders, and also prayed a foreclosure. After other lienors praying for a sale had come in, which were

prior to the first consolidated mortgage, and were past due, a majority of the first consolidated mortgage bondholders filed a cross bill, in which they repudiated the action of their trustees declaring the mortgage due, and prayed the court to order a sale subject to all incumbrances prior to the second consolidated mortgage, and to direct the payment out of the proceeds of all arrears of interest on the first consolidated mortgage bonds, and on certain mortgages prior to that; but they did not offer to bid an amount sufficient to pay these arrearages, or any of the large costs and expenses of the suit. *Held*, that the trial court rightfully refused to decree as thus requested, and properly adhered to its determination to decree a sale free of all liens, reserving a right to any party to redeem on paying the several amounts found due, with costs.

4. SAME—ORDER OF SALE—RECEIVER'S OBLIGATIONS.

The decree for sale on foreclosure sale of a railroad which is in the hands of a receiver may properly direct that the sale be made subject to outstanding obligations of the receiver, at the same time requiring the receiver to file a statement thereof in detail, so that the amount may be known with sufficient certainty to enable intending purchasers to bid with confidence.

5. SAME—PRIORITIES—PREFERENCES FOR SUPPLIES.

A railroad company purchased rails on a credit of eight months, promising to pay therefor out of earnings. At the end of that time only a part was paid, the notes for the balance being extended. Before the expiration of the credit, however, the company had paid interest on mortgage bonds, borrowing the money on its notes, which were afterwards paid out of earnings. Eighteen months after the purchase a receiver was appointed. *Held*, that the giving of the credit indicated an expectation that interest on the bonds would be paid, and hence the payment thereof was not a diversion of earnings within the rule giving a preference, on foreclosure, to current expenses incurred on the faith of earnings shortly before the appointment of a receiver.

Appeals from the Circuit Court of the United States for the District of South Carolina.

In Equity. Bill by Frederick W. Bound, a holder of second consolidated mortgage bonds of the South Carolina Railway Company, against the company and others, for the appointment of a receiver, ascertainment of lien claims, and for foreclosure. A receiver was appointed, the holders of the senior and junior mortgage bonds and other lien claimants came in, and the priorities were adjudicated. See 43 Fed. Rep. 404; 46 Fed. Rep. 315; 47 Fed. Rep. 30; 50 Fed. Rep. 312, 853; 51 Fed. Rep. 58; 55 Fed. Rep. 186. The final decree ordered a sale free of all liens, and the case comes to this court on appeals by Frederick W. Bound, the complainant, and Smith and Kissel, cross complainants. Decree of sale affirmed, but reversed in so far as it gives priority to the claim of the Lackawanna Coal & Iron Company for certain steel rails furnished.

Statement by MORRIS, District Judge:

There are five separate and distinct mortgages now existing on the property of the South Carolina Railway Company:

First. The statutory mortgage of 1837, which is past due, and which, with interest, amounts to about $50,000. Proceedings to foreclose this mortgage had been instituted before this suit was commenced, resulting in a decree for sale, which, upon appeal to the supreme court of the United States, has been affirmed.

Second. The mortgage of 1868, which, except about $8,000, is past due, and which amounts to about $250,000.

Third. The consolidated first mortgage of 1881, the principal of which is $4,883,000. On this mortgage, at the date of the filing of the original bill in

this suit, 7th October, 1889, there were two past-due interest coupons, amounting to $146,490 each.

Fourth. The second consolidated mortgage of 1881, amounting to $1,330,000, the principal of which is due, and on which, at the date of the filing of the bill, there were two past-due interest coupons.

Fifth. The income mortgage of 1881, amounting to $3,000,000.

All of these mortgages are admittedly due, except the first consolidated mortgage, which the trustees have, under the authority given them by the mortgage, declared to be due for default in the payment of interest; but their action has been repudiated by certain holders of the bonds claiming to be a majority, and has been upheld by others. The original bill was filed 7th October, 1889, by Bound, the holder of bonds of the second consolidated mortgage. The bill alleged the insolvency of the railroad corporation, default in all of its mortgages, mismanagement and deterioration of the property, danger from suits and judgments, and prayed for a receiver, and for a sale to foreclose the second consolidated mortgage, subject to all prior liens. It made the railroad company and all prior and subsequent lienholders parties defendant, and prayed that all creditors claiming any interest in or lien on the mortgaged property might be restrained from suing or enforcing their claims, save in that court and in that cause.

All the lienors came in by cross bills, setting up their respective mortgages and claims, and asking for a sale of the entire property that their claims might be paid.

The cross bill filed by Barnes and Sloan, the trustees under the first consolidated mortgage, alleged nonpayment of two interest coupons; that under the power contained in their mortgage they had declared the principal due and payable for default in the payment of interest; that the net earnings of the company had been insufficient to pay the interest on its mortgage bonds; that its floating debt had steadily increased, and that the two prior mortgages were past due and payable. Their cross bill charged that the facts alleged in it and in the original bill filed by Bound showed that a sale discharged from all liens would be for the interest of the first consolidated mortgage bondholders and all other creditors of the company, and prayed for such a sale.

The final hearing of the cause was not had until after the court, through its receiver, had operated the railroad for nearly three years. During that time it had been demonstrated that under careful management by a receiver it required all the earnings of the road to maintain it in good running order, and pay the expenses of operating it, and that there was no net revenue applicable to the payment of interest on its first consolidated mortgage bonds. There was also testimony adduced tending to show that the money for the payment of interest prior to the defaults which led to this foreclosure suit had been raised only by the sacrifice of securities and property which it was highly important the railroad should retain, and that money paid for interest had not been derived from net earnings.

By the master's report it appeared that the Coghlan statutory mortgage of 1837, amounting to about $50,000, was due, principal and interest, and had passed into a decree for sale; that the mortgage of 1868, on which there was due about $235,000, was in default, and payable, and that the holders were urging a foreclosure, and were entitled to be paid. As to the first consolidated mortgage, amounting to $4,883,000, at the time when the court proceeded to pass a decree there were three semiannual interest payments in arrear, each amounting to $146,490. The second consolidated mortgage, amounting to $1,330,000, had been declared due and payable, and there were seven half-yearly payments of interest in default, amounting to $39,000 each, and the income mortgage bonds, amounting to $3,000,000, were also due.

During the pendency of the litigation it was brought to the attention of the court that there was a dispute between the trustees of the first consolidated mortgage and certain petitioners, Smith, Kissel, and Martin, who claimed to own or to represent the owners of a majority of the first consolidated mortgage bonds. Messrs. Smith, Kissel, and Martin, claiming to be the holders of a large amount of the first consolidated mortgage bonds, on their own petition were made defendants on 6th June, 1890, and answered the cross bill of

their trustees, Sloan and Barnes, alleging that the trustees had wrongfully declared the principal of their bonds due in the interest of junior securities, to whose interest it would be that the first consolidated mortgage bondholders should be compelled to accept a less rate of interest, and charging that the earnings of the railroad, if properly applied, were sufficient to pay interest on their bonds, and that, if a sale was decreed, it should be subject to the first consolidated mortgage. The provision with regard to default in the payment of interest rendering the principal due and payable, as contained in the bonds, was as follows: "Upon default in the payment of interest on this bond for six months after it becomes payable and has been duly demanded, the trustees, subject to the provision of the said mortgage, may declare the principal of all the bonds immediately payable, and must do so if required by the holders of one-fourth of all such bonds." The provision in the mortgage was that, if default in payment of interest should continue for six months after demand made, "then and thereupon the principal of all bonds hereby secured shall be and become immediately due and payable, provided the trustees under this mortgage give written notice to the party of the first part, while such default continues, of their option to that effect, which notice they shall be bound to give, if required in writing so to do by the holders of one-fourth in amount of all such bonds then outstanding. That, in case the premises hereby conveyed, or any portion thereof are sold under or by virtue of the lien of any prior mortgage, or of any other lien having priority over this indenture, the principal of all bonds hereby secured shall be and become immediately due and payable, simultaneously with such sale."

At the final hearing of the case the court expressed itself as of the opinion that the action of the trustees of the first consolidated mortgage in declaring the principal of the bonds due had been improvident, and held that there was evidence that the trustees had acted hastily, and not solely with reference to the interest of the first consolidated bondholders; but the court did not set aside or annul the action of the trustees, and was of opinion that the three years' operation of the railroad by its receiver had demonstrated that at that time there was practically no course open except to sell the railroad, clear of all liens. It appeared to the court, as stated in its opinion, that the holders of the two mortgage debts prior to the first consolidated mortgage were pressing for a sale, and were entitled to their money without further delay, and that the rights of all claimants would be most fairly and equitably protected by a sale of the entire property, clear of all incumbrances; and it so decreed.

After the filing of the opinion of the court, and before the signing of the decree for sale, Smith and Kissel filed a petition, asking the court to allow them, or any holder of first consolidated mortgage bonds, or the trustees of the first consolidated mortgage, to redeem the Coghlan mortgage of 1837 and the mortgage of 1868, and to pass an order directing the holders of bonds secured by those mortgages to deposit them in court, and that, upon paying the amounts due on said bonds into court, the persons so paying should be substituted as the owners of said bonds, and praying the court to declare that the interest only of the first consolidated mortgage was due, and to decree a sale to be made subject to that mortgage and the liens prior to it, and to decree that out of the proceeds of sale the past-due interest on the prior liens and on the first consolidated mortgage should be paid.

All the other parties to the cause objected to the granting of this petition, and the court refused it, and passed the decree of 23d November, 1892, directing that, unless the claims, as ascertained and adjudicated by the decree, were paid in 30 days, the entire property should be sold, free from all liens, and requiring the purchaser to pay all the obligations of the receiver.

From this decree Smith and Kissel have appealed, and urge as error in the decree that it did not adjudge that they had the right to redeem the property from the liens which were prior to the first consolidated mortgage, and in not dismissing the cross bill of Barnes and Sloan, trustees, asking for a sale discharged from the first consolidated mortgage, and in not decreeing a sale under the second consolidated mortgage only.

Bound, the original complainant, also appealed, and assigned for error that the court had not decreed a sale under the second consolidated mortgage

subject to prior liens, and that the decree required the purchaser to pay the compensation of the receiver and such of his obligations as had not been paid out of the income received by him prior to his delivery of possession; and also assigned as error the allowance by the decree as a lien prior to the second consolidated mortgage bonds of the claim of the Lackawanna Iron & Coal Company to the extent of $33,960, for steel rails purchased by the railway company in April, 1888.

Mitchell & Smith, for F. W. Bound.

W. H. Peckham, for Smith and Kissel.

Smythe & Lee, for Barnes and Higginson, trustees of second consolidated mortgage.

T. W. Bacot, for holders of mortgage of 1868.

Lord & Cohen, for Sloan and Barnes, trustees of first consolidated mortgage.

E. Ellery Anderson and George W. Dillaway, for certain holders of second mortgage bonds, income bonds, and stock.

A. M. Lee, for holders of bonds and stock of the New York & Charleston Warehouse & Steam Navigation Co.

Rutledge & Rutledge, for Lackawanna Iron & Coal Co.

Before FULLER, Circuit Justice, and HUGHES and MORRIS, District Judges.

MORRIS, District Judge, after stating the case as above, delivered the opinion of the court.

The principal point of contention on this appeal is whether or not the court was right in directing a sale clear of all liens, or should have decreed a sale subject to the first consolidated mortgage and all prior incumbrances. The objection urged that the decree was not in conformity to the prayer of the original bill, which was only for a foreclosure of the second consolidated mortgage, we think is not tenable. The receiver was appointed upon the prayer of the original complainant, and upon his prayer all persons having liens, mortgages, or claims of any kind were required to come into that case, and were enjoined from proceeding in any other case to enforce their rights. After all the lien claimants had come in, asking affirmative relief, with no objection to the form of their proceeding from any one, and after the court for nearly three years had dealt with the suit as a consolidated case, embracing all the parties as actors, in our opinion it was too late, upon the passing of the final decree, for the complainant to contend that, because the lienors had filed cross bills, and had not obtained leave to file original bills, the pleadings were irregular. The result of the filing of cross bills by all the lienors, all asking affirmative relief and a sale of the mortgaged property, to which mode of pleading no one raised any objection, was that the proceeding became and was treated by all parties as a consolidated case for the assertion of their respective rights as creditors, and for the preservation of the railroad and its franchises until their respective priorities could be adjudicated, and a decree for sale could be obtained, and the property handed over to a purchaser. All the proceedings from the filing of the original bill and the appointment of the receiver, in October, 1889,

to the filing of the opinion of the court, in June, 1892, were so treated by the parties and by the court. The proceeding was in fact a consolidated case, in which all the creditors and claimants were actors, seeking payment of their respective claims, and in which they all agreed that a receiver was necessary, and in which, by order of the court, and upon the prayer of the original complainant, they were all enjoined from proceeding in any other court or in any other case. If the prior lienors had proceeded by leave of the court by original bill to enforce their liens by foreclosure, the court would have ordered their cases consolidated with the case in which the receiver had been appointed, and in which the property and all its revenues was in the custody of the court, and in which the amount and priorities of the different liens was being ascertained.

On this branch of the appeal, the only substantial question is whether, assuming that the question was properly before it, the court was right in ordering the sale free from all liens. Certainly, so far as the Coghlan mortgage of 1837 and the mortgage of 1868 were concerned, those lienors were pressing for a sale, and were entitled to it, unless paid. No one, so far as the record discloses, up to the time when the opinion of the court on the final hearing was filed had offered to pay them. Did the petition afterwards filed by Smith and Kissell contain such an offer? We think it did not. Their petition asked the court to direct the holders of these prior securities to deposit them in court, and that the petitioners, or those acting with them, might have the privilege of redeeming; but it made no offer to redeem. Indeed, it rather appears from the language of the petition that they guardedly abstained from making such an offer. It also asked the court to direct a sale, subject to all incumbrances prior to the second consolidated mortgage, and to direct that out of the proceeds of sale under foreclosure of the second consolidated mortgage there should first be paid all interest in arrear on the mortgage of 1837, the mortgage of 1868, and the first consolidated mortgage, but it made no offer to bid an amount to pay those arrearages, or any of the large costs and expenses of the suit and of the sale. There was, therefore, reason to anticipate, in view of what had come to the knowledge of the court through the receivership of the insolvency of the railroad company, that the scheme of sale proposed by Smith and Kissell would prove nugatory. It is also far from clear, unless upon a distinct agreement of the parties concerned, how the court could direct that the proceeds of a sale under the second consolidated mortgage to realize money to be applied to the payment of its bondholders should be applied to the payment of the interest on prior incumbrances. It is a proper requirement of a petition to be allowed to redeem that it should contain a formal offer to pay whatever sums the petitioner admits to be due. Story, Eq. Pl. (8th Ed.) § 187 et seq. Considering the delay in filing this petition until after the announcement of the decision of the court, and in view of the fact that the claims to be redeemed had been ascertained and adjudicated, there was every reason why such an offer should be distinctly made

before the court could be asked to direct that the petitioners might redeem in the special manner prayed by them. The general right to redeem according to the ordinary course of equity was sufficiently allowed by the clause of the decree which, after ascertaining and adjudicating the several claims and their priorities, provided that "said railroad company, or any one for it, or any one claiming under it, or any of the parties to this suit, may redeem such premises, property, and franchises at any time before such sale shall have been made upon payment of the several amounts so found to be due, together with all costs of advertisement of the sale which may be incurred."

Smith and Kissel did not represent all of the first consolidated mortgage bondholders, and the scheme proposed by them made no provision for payment of the arrears of interest which the minority of the bondholders were at least entitled to have paid them, unless the suggestion that it should be taken out of the money to be derived from a sale to satisfy the second mortgage bondholders can be so considered.

With regard to the alleged error in making the purchaser at the sale take the property subject to the outstanding expenses and obligations incurred by the receiver not already paid out of revenue, the decree required the receiver to file a statement of such outstanding obligations and unpaid expenses prior to the sale, showing in detail all unpaid claims and obligations, so that the amount could be known at the sale with sufficient certainty to enable an intending purchaser to bid with confidence. It is a proper, if not the only, way of selling such a property, which must be kept going by the receiver until delivered to the purchaser.

Steel rails to the amount of $50,255.93, necessary for the maintenance of the road, were purchased in April, 1888, by the railway company, upon a credit of 8 months, from the Lackawanna Iron & Coal Company. This purchase was 18 months prior to the appointment of the receiver. The expectation and promise of the president of the railway company was that the purchase would be paid for out of the earnings of the railroad, and the time of payment was arranged with reference to the expected receipt of earnings. These expectations were not fulfilled, and only a portion of the debt was paid, the notes for the balance being extended from time to time until the receiver was appointed. During this interval, in July, 1888, three months after the purchase, and before the first notes matured, the sum of $33,960 was paid on account of interest to the second consolidated mortgage bondholders. This money was borrowed on notes of the company, which were subsequently paid out of the earnings of 1889. The court held that this payment of interest was a diversion of earnings, which had been dedicated to the payment of this purchase of materials necessary for the maintenance of the road, and, as the second mortgage bondholders had filed the bill asking for a receiver, that the Lackawanna Company had an equity as against them to displace their mortgage lien to the extent of the earnings which had been paid to them.

We think the court was in error in so holding. The rule giving preference to current expenses incurred on the faith of the earnings of a railroad shortly before the appointment of a receiver has never been carried so far. The debt of the Lackawanna Company was an ordinary merchandise debt, evidenced by notes, which were renewed from time to time. It had no stronger equity or claim upon the earnings than had those who advanced money to pay the July interest on the second consolidated bonds. The railway company was struggling with financial difficulties, and no doubt the effort to raise money to pay interest and prevent foreclosure was intended for the benefit of all the floating debt creditors. The railroad property being heavily mortgaged, all that any unsecured creditors had to look to for payment was the earnings. The immediate earnings, it is clear, the Lackawanna Company did not look to, as the sale was upon a credit of eight months. It must be inferred, therefore, that it was expected that interest on the mortgage debts was meanwhile to be paid during the running of the credit, otherwise a foreclosure would have been imminent within three months after the sale of the steel rails was made. The claim is quite different from those ordinary and necessary current expenses of operating a railroad contracted but a short time before a receivership, and which, by the sudden action of the court in appointing a receiver, are left unpaid.

The supreme court has recently, in Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. Rep. 824, indicated the narrow limits to which an equity court should confine itself in allowing any unsecured claim to displace vested contract liens. Wages due employes, current operating expenses, current balances of ticket and freight money arising from indispensable business relations, and similar current debts accruing within 90 days, are recognized as among the limited class of claims which, in its discretion, the court may allow to have priority. In the case cited the supreme court held it error to allow a claim for the rental of cars necessary to operate the road for the six months prior to the receivership. The court said:

"The case of a corporation for the manufacture and sale of cars dealing with a railroad company, whose road is subject to a mortgage securing outstanding bonds, is very different from that of workmen and employes, or those who furnish from day to day supplies necessary for the maintenance of the railroad. Such a company must be regarded as contracting upon the responsibility of the railroad company, and not in reliance upon the interposition of a court of equity."

In Kneeland v. Trust Co., 136 U. S. 89, 10 Sup. Ct. Rep. 950, the supreme court said:

"No one is bound to sell to a railroad company, or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of displacement of vested liens."

In the present case it is true that the promise was to pay out of the earnings, and it is also true that out of those earnings, to the extent of the amount decreed to have priority, interest was paid to the second mortgage bondholders, but it is also true that, by granting an original credit of 8 months, and by extending that credit over a period amounting in all to 18 months, the Lackawanna Company must have contemplated that during that period the interest falling due on the mortgage bonds was to be kept paid out of the earnings, so that the road could remain in the hands of the railway corporation. In our opinion, the decretal order of June 25, 1892, allowing priority to the claim of the Lackawanna Coal & Iron Company must be reversed, and the decree of November 23, 1892, so modified as to disallow the priority of that claim over any of the mortgage bonds.

The other assignments of error do not, in our judgment, require special discussion. The conclusion we have reached is that the decree should stand, with the modification above mentioned, and that the sale should be made in accordance with the decree, after such reasonable opportunity for payment, and after such proper and reasonable notice of the time of sale, as the court may direct.

Decree of June 25, 1892, allowing priority to the claim of the Lackawanna Coal & Iron Company reversed, and decree of November 23, 1892, modified accordingly, and affirmed as so modified; the costs of these appeals to be paid out of the fund.