CHAMBERLAIN v. WALTER et al.

(Circuit Court, D. South Carolina.    March 13, 1894.)

1. TAXATION—RAILROAD PROPERTY.
   Railroad property situated in South Carolina was assessed by the state
   board of equalization for railroads at 80 per cent. of its real value, under
   a provision (Gen. St. § 219) that all property should "be valued for taxa-
   tion at its true value in money," while all other property in the state was
   assessed by county boards of assessment at from 50 to 60 per cent. of the
   real value.    Held, in view of the general mode of assessing property for
   taxation in the state, upon application of a receiver for instructions, that
   there was no such evidence of an intention on the part of the board of
   equalization to violate the constitutional provision (article 9, § 1) in rela-
   tion to equality of taxation, and a design to put the burden of tax alone
   on railroads, as would warrant the interference of the court.

2. SAME.
   The constitution of South Carolina directs all lands to be assessed every
   five years, and requires a uniform and equal rate of assessment and
   taxation; but, in practice, all railroad property, including the land form-
   ing part thereof, is assessed annually.    Held, that a railroad is to be re-
   garded as a unit, of which the land forms a part, and, therefore, that the
   annual valuation worked no such discrimination against railroads as
   would constitute a denial of the equal protection of the laws.

Bill by D. H. Chamberlain, receiver of the South Carolina Rail-
way Company, against George H. Walter, Hugh Ferguson, and oth-
ers, sheriffs and county treasurers of the state of South Carolina,
seeking the instructions of the court in respect to the assessment
and levy of a tax on the property of the railway company.

Brawley & Barnwell and Mitchell & Smith, for complainant.

O. W. Buchanan, Atty. Gen., Ira B. Jones, and Samuel Lord, for
defendants.

SIMONTON, Circuit Judge.    This bill is brought by the receiver
of the South Carolina Railway Company against certain county
treasurers and sheriffs of the state of South Carolina, seeking in-
structions respecting the assessment and levy of a tax upon the
railway property in his hands.    This proceeding is ancillary to
the case of Bound v. Railway Co., 7 C. C. A. 322, 58 Fed. 473,
in which the complainant herein was appointed receiver.    Davis
v. Gray, 16 Wall. 219.    After setting out the sections of the Gen-
eral Statutes of South Carolina prescribing the mode of making
returns of railroad property for taxation, and then averring that
he had made his return for the tax of 1891, fully conforming in
all respects with the requirements of the law, the bill goes on to
say that all real property in South Carolina assessed for taxation
has been heretofore, and is now, openly and notoriously assessed
for taxation at a uniform rate of 50 or 60 per cent. of its actual
face value, and that personal property is assessed at the same rate,
or less; that he made the return of the property under his charge
at the accustomed valuation theretofore placed upon it, at from
60 to 65 per cent. of the same, which was fully equal to, and in real-
ity higher than, the relative value of other property in the state;
that this return having been filed with the comptroller general,

and having been submitted by that officer to the state board of equalization for railroads, that board considered the same, and raised the assessment from $13,000 per mile, as made by complainant, to $16,000 per mile, and in the case of the Carolina, Cumberland Gap & Chicago Railway property, leased by and so returned by complainant, raised it from $5,000 to $10,000 per mile. At the same time the same board raised the assessment of all the other railroad property in this state greatly above the returns made by them, respectively. The bill then charges that this board of equalization for railroads made this increase in the assessment of railroad property well knowing that the valuation fixed in their returns was fully equal to, and the same as, the average and uniform valuation of similar real and personal property in this state by other boards; that, in making their valuation, county auditors and county boards of assessment throughout the state had concurred in establishing a rate of valuation about 50 or 60 per cent. of the actual value, and that this board of equalization for railroads assessed the property at a value fully equal to, or greater than, its actual value, with the intent thereby to cast a great proportion of the burden of taxation on the railroads, and to shield and protect from their just share of taxation other classes of property holders; that the constitution of South Carolina provides that all property subject to taxation shall be taxed in proportion to its value, and directs the general assembly to provide by law for a uniform and equal rate of assessment and taxation, and to prescribe such regulations as shall secure a just valuation for taxation of all property,—real, personal, and possessory.

The bill charges that this board of equalization for railroads has violated this part of the constitution; that by its action the property of all railroads in the state has been denied by the state the equal protection of its laws; and that this railroad property has been assessed and taxed unequally and unjustly, in violation of the fourteenth amendment to the constitution of the United States. The bill also charges that while, under the constitution of this state, lands and the improvements thereon are assessed for taxes every fifth year, the property of railroad companies, consisting largely of land and improvements thereon, is assessed for taxation annually,—in this respect being treated as personal property,—but that, for the purposes of lien and collection of taxes, the acts of assembly deal with it as real estate; that this action on the part of this board is unconstitutional, null, and void, depriving railroad companies of their property without due process of law, and denying to them equal protection of the laws. The bill also charges that the act of the board in raising the assessment is in itself null and void, and the assessment is illegal, because this is not within the powers of the board. It is averred that the complainant has paid the amount of tax lawfully and justly due on a proper assessment. The answer denies that the return made by complainant is true and correct in valuation of the property thereon. It denies that the sum paid is the amount of taxes really and justly

due.   It avers that complainant has a plain, adequate, and complete remedy at law.

It is well, at the threshold, to define the limit of the power of this court over the subject-matter of this suit.   It cannot review the assessment made by the state officials simply upon the ground that it is excessive.   Stanley v. Supervisors, 121 U. S. 549, 7 Sup. Ct. 1234.   Nor can it make a new assessment, or direct another to be made.   State Railroad Tax Cases, 92 U. S. 615.   Nor can it interfere upon the ground that the tax is illegal.   Williams v. Supervisors, 122 U. S. 154, 7 Sup. Ct. 1244; Lyon v. Alley, 130 U. S. 177, 9 Sup. Ct. 480.   Nor can it interfere because the court would prefer, and would have adopted, a different system.   W. U. Tel. Co. v. Attorney General, 125 U. S. 533, 8 Sup. Ct. 961; Davenport Nat. Bank v. Davenport Board of Equalization, 123 U. S. 83, 8 Sup. Ct. 73.   "So long as a state, by its laws prescribing the mode and subjects of taxation, does not intrench upon the legitimate authority of the Union, or violate any right recognized or secured by the constitution of the United States, this court, as between the state and its citizen, can afford him no relief against state taxation, however unjust, oppressive, or onerous" it may be. Kirtland v. Hotchkiss, 100 U. S. 491; Memphis Gas-Light Co. v. Taxing Dist. of Shelby Co., 109 U. S. 398, 3 Sup. Ct. 205.   All these are questions for the state alone, and are within its police power.   But when the overvaluation of property assessed for taxation has arisen from the adoption of a rule of appraisement which conflicts with a constitutional or statutory direction, and operates unequally, not merely on a single individual, but on a large class of individuals or corporations, the courts can give redress to the party aggrieved thereby.   Stanley v. Supervisors, 121 U. S. 551, 7 Sup. Ct. 1234.   It is put clearly and tersely in Cummings v. Bank, 101 U. S. 157:

"When a rule or system of valuation is adopted by those whose duty it is to make the assessment which is designed to operate unequally, and to violate a fundamental principle of the constitution, and when this rule is applied, not solely to one individual, but to a large class of individuals or corporations."

We see that there is an essential ingredient.   Those whose duty it is to make the assessment must adopt a rule or system of valuation with the design that it shall operate unequally, and violate some fundamental principle of the constitution.

What is the rule or system of taxation adopted by the board of equalization for railroads?   The general assembly of South Carolina are instructed by the constitution to prescribe such regulations as will secure a just valuation for taxation of all property under a uniform and equal rate of assessment and taxation.   Article 9, § 1. The act passed pursuant thereto provides that:

"All property shall be valued for taxation at its true value in money, which in all cases not otherwise specially provided for by law shall be as follows, to wit:  For personal property the usual selling price on the usual terms of similar property at administrator's or executor's sales at the place where the return is made, and for real property the usual selling price on the usual

terms of similar property at sales for partition under the order of court at the place where the return is made. If there be no selling price then what is honestly believed could be obtained for the same at a fair sale under the conditions before mentioned." Gen. St. S. C. § 219.

Apart from the consideration that, even if the assessment fixed by this board on the property of complainant is excessive, this court cannot interfere (Stanley v. Supervisors, supra), there is no reason to think that the board do not, in the language of the act, "honestly believe that the value fixed by them on this property is its selling price at a fair sale." Indeed, this last conclusion is not denied. The complainant avers that the property was returned by him at 60 to 65 per cent. of its real value, in his estimation. And we can presume that, when it is raised by the board, they acted under the statute. The ground of complaint is that, by uniform and notorious practice, other real and personal property is assessed for taxation at about 50 to 60 per cent. of its value, notwithstanding the act of assembly, and that this action of the board of equalization for railroads, departing from this practice in the case of railroad property, was with the design, intent, and purpose of putting the burden of tax alone on railroads, and not in order to carry out the provision of the act of assembly.

Evidence of this design is deduced from the course pursued with regard to other property in the state, and the practice prevailing of assessing such property below its real value in money,—a practice well known to this board, and departed from by them in assessing the property of railroads. In South Carolina the general mode of assessing property for taxation is as follows: Each county in the state is divided into tax districts,—small territorial subdivisions,—for the sake of convenience. The county auditor appoints for each tax district three freeholders resident therein, as a board of assessors. They meet, organize, elect a chairman, and proceed to assess for taxation all the real and personal property in their tax district. This assessment is sent to the county auditor, by whom it is submitted to the county board of equalization, which consists of all the chairmen of the tax-district boards. This county board meets at the office of the auditor and examines the returns of all the tax-district boards. If any property, real or personal, has been returned below its true value, they raise the assessment. If above such value, they decrease it. They cannot reduce the aggregate below the aggregate of all the returns of the tax-district boards. The chairmen of the county boards constitute the state board of equalization. It, in turn, reviews the action of all the county boards. It has the same powers as to increasing or diminishing values that the county boards have. The auditors of the counties act as clerks of the county boards and the comptroller general attends upon the state board.

With regard to railroad property an entirely different method prevails. The president and secretary of each company are required, annually, to make returns, to the comptroller general, of the railroad property and its value. These returns are submitted by the comptroller general, for consideration and action, to a board con-

sisting of state officers, the attorney general, the comptroller general, the secretary of state, and the state treasurer. Their duties are to "equalize the value of the property of railroad companies by increasing the value of the roads and property of such company as shall in their judgment have been returned at too low a valuation and diminishing the value of such as may have been returned at too high a valuation." Gen. St. § 186. The term here used is "equalize." But as there is no aggregate to be maintained, as in the case of county taxes, this word must be used with reference to the language of the constitution, and must be construed to mean to secure equality. This board is entirely distinct, in personnel and otherwise from the other boards above referred to.

A mass of testimony has been taken, and has been filed with the record, with respect to the mode and practice of assessment by the tax-district and county boards. It would consume too much time to go into this in detail. The result shows that for a long period of time, up to recent date, and perhaps up to this time, the provisions of the act of assembly have not been regarded, and real and personal property have been assessed for taxation below the real value in money. But nowhere does it appear in the testimony that this is the result of preconcert, connivance, or conspiracy between and among the boards, such as appears in Cummings v. Bank, supra. There is evidence of coincidence in opinion and action, of concurrence in methods and in general result, but none whatever—that is, of direct evidence—of preconcert in action. Such concert of action may possibly be inferred from similarity in the result; but the evidence shows that, although the boards all assessed real and personal property below its real value in money, the course of the several boards was capricious,—without fixed method or percentage. Although the average of valuation was below the value in money in all the counties concerning which testimony was offered, in some of the counties parcels of land were assessed, some above and some below their true value in money, notably in Richland county. But is this coincidence of action and result on the part of tax-district and county boards conclusive evidence of design to put the burden of taxation on railroad companies? Is it susceptible of other explanation? It would seem that it is the result of a vice in the system of assessment. The tax-district boards make the first assessment. By law they must be freeholders resident in the tax district. They have a direct personal interest in a low assessment, and their environment induces them to make it. When men deal with the interest of the government and of the citizen, all doubts are solved in favor of the citizen. This must be said, however, in explanation, and perhaps in justification, of the action of these boards. In an agricultural community, and in one dependent upon the well-being of the agriculturists, it is impossible to fix the value of lands. A succession of bad crops will make land unsalable. One good crop will create a demand, and a selling price. So what land may bring, if sold, depends, not on its intrinsic value, so much as on the circumstances under which it is sold. Taxes

must be paid without regard to seasons or crops. Hence, the average valuation designated to cover a period of five years. If there be no preponderance of evidence showing design on the part of the tax-district and county assessors to throw the burden on the railroads, is there any evidence from which such design can be inferred on the part of this board of equalization for railroads? The comptroller general (one of this board, and, from his official duties and experience, the leading member of the board, probably directing and controlling its action), in his official report to the legislature in 1891, calls the attention of that body 'to the low rate of assessment of much of the property in the state, and urges legislation to correct the evil. And when we consider the independent action of this board under a statute imperatively requiring them, in making assessment, to take as a standard the true value of the property in money, and also consider the admission of the bill that the return was about 65 per cent. of the real value, $13,000 per mile, and that the increase to $16,000, making it about 80 per cent., we cannot hold that this increase in assessment is so excessive and unjust as necessarily to indicate the design and motive charged.

Another objection to the action of the board of equalization for railroads is that, notwithstanding the fact that a large part of the property of railroad companies is land, they are assessed annually. The state constitution directs that lands shall be assessed every five years, and this practice is observed with respect to all lands except those of railroad companies. This indicates design to oppress railroad companies, and at all events violates the fourteenth amendment. The constitution of South Carolina (article 9, § 1) directs the general assembly to "provide by law for a uniform and equal rate of assessment and taxation." It gives the general assembly full discretion "to prescribe such regulations as shall secure a just valuation for taxation of all property." The general assembly obeyed the direction by requiring all property to be assessed at its true value in money. Exercising its discretion, it prescribed a set of regulations, which, in its judgment, secured a just valuation of railroad property for taxation. A railroad is a unit, every part contributing to its purposes as a whole. If it be a corporation, its corporate purpose is the maintaining a railroad, and all and every part of this property must contribute to this purpose. Its right of eminent domain is limited to this purpose. This unit is made up of lands, personal property, choses in action, easements, all dependent upon and inseparable from each other, deriving their value from this inseparability,—from the fact that they contribute to this unit. They differ from every other species of property, and the discrimination made, as between them and other corporations and individuals, in the methods and instrumentality by which the value of their property is ascertained, is not invalid. Kentucky Railroad Tax Cases, 115 U. S. 337, 6 Sup. Ct. 57; State Railroad Tax Cases, 92 U. S. 611. The mode prescribed by the legislature of this state is to get at the value of the plant,—that is, of all these elements going to make up the railroad,—and to ascertain what their combined contributions making up this unit are worth. If

they separated the .component parts, and attempted to fix separate values upon them, they would enter into an impossible task. The value of the lands of a railroad depend much on the character and condition and completeness of its rolling stock. The utility and consequent value of the rolling stock depend largely upon the facilities at stations and at termini; the amount, location, and character of the land used therefor.

After careful consideration, there appears no evidence of such a design as will alone give this court jurisdiction. Let an order be taken authorizing and instructing the receiver of the South Carolina Railway Company to pay from the funds in his hands as such receiver the remainder of the tax unpaid, and the costs of these proceedings.