FARMERS' LOAN & TRUST CO. v. AMERICAN WATERWORKS CO. et al.

(Circuit Court, D. Nebraska. March 30, 1895.)

1. QUASI PUBLIC CORPORATIONS—RECEIVERSHIP—PREFERENTIAL CLAIMS.
   Current operating expenses of a railroad corporation for a limited time anterior to the receivership in foreclosure, and the claims of sureties who have executed bonds to prevent forced sales of the property, may be preferred in payment out of the income or corpus of the estate to the mortgage bondholders.

2. SAME—NO PREFERENCE ALLOWED CLAIMS FOR CONSTRUCTION.
   One who furnishes material or labor in the face of a recorded mortgage for the purpose of constructing permanent improvements necessary to the maintenance and operation of a quasi public corporation is not thereby entitled to an equitable lien, superior to that of prior mortgagees, either on the income earned after the appointment of receivers in foreclosure or upon the corpus of the mortgaged property.

3. MORTGAGEES NOT ENTITLED TO INCOME UNTIL DEMAND OR SUIT.
   Mortgagees of income, who have stipulated in their mortgage that the mortgagor shall have possession until default, ordinarily acquire no right, as against the mortgagor or its creditors, to the income, or to an accounting concerning it, until they demand its surrender or file a bill for the foreclosure of their mortgage.

4. INCOME DIVERTED TO PAY INTEREST MAY BE RESTORED BY THE CHANCELLOR.
   A waterworks company owed $44,000 for engines necessary to operate its plant. During 20 months receivers appointed upon the application of stockholders and unsecured creditors operated its plant and received its income. They applied over $100,000 of this income to the payment of interest on a prior mortgage, and left the engines unpaid for. A receiver was then appointed upon the petition of the mortgage bondholders, who took possession of the property and collected $55,000 of income that had been earned before his appointment. *Held*, that the chancellor might properly take from the income earned by the latter receiver a sufficient amount to restore the moneys diverted by the former receivers to the payment of interest, and apply a portion of this amount to the payment of the $44,000 due for the engines.

In Equity. Suit for foreclosure of a mortgage against a water company. On petition of the Holly Manufacturing Company, intervener.

Charles Offutt, for Holly Manufacturing Company.

R. S. Hall, for Farmers' Loan & Trust Company and the receivers of the American Waterworks Company.

SANBORN, Circuit Judge. On July 1, 1887, the American Waterworks Company of Illinois, a corporation, mortgaged its plant in the city of Omaha, including all the property it then had or might thereafter acquire, and all its water rents and income then or thereafter accruing, to the Farmers' Loan & Trust Company of New York, to secure the payment of bonds to the amount of $4,000,000, of which $3,600,000 have been issued. It appears from the face of this mortgage that the waterworks company then contemplated large and extensive improvements, additions, and enlargements of its works and plant, exceeding in value the plant it then had, and that at least $2,300,000 of the bonds were to be issued to obtain money to construct these extensive improvements and additions. This mortgage was duly recorded in the county in which the property is situated on July 18, 1887. Between May 12, 1888, and April 3, 1891, the Holly Manufacturing Company furnished to the waterworks company three engines and certain hydrants, boilers, valves, and material, which were made a part of the improvements, additions, and enlargements contemplated by the waterworks company when the mortgage was made, and which were essential and necessary to the successful maintenance and operation of the waterworks. The contract price of these articles was $149,722.24. Between January 23, 1888, and July 28, 1891, the Holly Manufacturing Company was paid $105,711.25 on account of these materials, and there was still due to it at the latter date $44,011.97, no part of which has ever been paid. On July 28, 1891, the American Waterworks Company of Illinois sold its plant at Omaha to the American Waterworks Company of New Jersey, a corporation, which assumed and agreed to pay the debts of the Illinois corporation. On February 11, 1892, on the application of certain stockholders of the New Jersey corporation a receiver of all its property in the district of Nebraska was appointed by this court. On July 20, 1892, upon the bill of stockholders and creditors a receiver of the New Jersey corporation was appointed by the court of chancery of the state of New Jersey; and on September 23, 1892, this court recognized the New Jersey receiver of the corporation, and turned the property in Nebraska over to him. On October 13, 1893, the complainant filed its bill to foreclose the mortgage of July 1, 1887, and upon its motion receivers were appointed by this court of all the property of the New Jersey corporation in Nebraska; and they have since been and still are in the possession of that property, and are operating the waterworks. On June 29, 1892, the Holly Manufacturing Company recovered a judgment against the American Waterworks Company of Illinois for the amount claimed in its petition in this case; and its claim for this amount was duly proved in the chancery court of New Jersey, and allowed by the receiver and the New Jersey chancery court as soon as the receiver in that proceeding had qualified. On February 11, 1892, when the receiver, at the suit of the stockholders, was appointed, the unsecured floating in-

debtedness of the waterworks company was about $80,000. About $23,000 of this indebtedness and more than $100,000 of interest on the mortgage debt were paid under the orders of this court by the receivers in charge of the property before the foreclosure bill in this case was filed. When that bill was filed the New Jersey corporation owed about $57,000 to unsecured creditors, and about $55,000 of income had then been earned, and was afterwards collected by the receivers in the foreclosure proceedings. The receivers under the foreclosure proceedings have since their appointment paid more than $60,000 for interest on the mortgage debt, and now have on hand funds sufficient to pay the balance due the unsecured creditors, but not sufficient funds to pay the interest that is now past due on the mortgage debt. On March 5, 1894, the Holly Manufacturing Company filed its claim in this case; and it prays for a decree establishing a lien in its favor upon the income of the waterworks in the hands of the receivers superior to that of the mortgage bondholders, and directing that the receivers pay its claim out of the income of the corporation in their hands before they pay the principal or interest of the mortgage debt. The mortgage provides that the waterworks company may retain possession of the mortgaged property and collect the rents and income thereof until default in the payment of the interest or in the performance of some of the covenants or agreements of the mortgage, but that upon such default the right of the mortgagor to retain possession and to collect such rents shall immediately cease, and the right of possession of the same shall immediately vest in the complainant, and the complainant may at once enter into possession and collect the rents. There is, however, another provision,—that, in case of any default as aforesaid which shall continue for 90 days, it shall be lawful for the complainant to foreclose the mortgage, and to apply for the appointment of a receiver of all the rents, profits, debts, and demands of the mortgagor. There was no application for the appointment of a receiver, and no demand by the complainant for the surrender of the rents, income, and profits of these waterworks until it filed its bill of foreclosure on the 13th day of October, 1893.

If no receivers had been appointed prior to that date at the suit of stockholders or creditors, the mortgagor would not have been required to account to the complainant for its disposition of the rents and profits earned prior to the filing of the bill for foreclosure; nor could the trustee under the mortgage have enforced any equitable lien upon them. Railroad Co. v. Cowdrey, 11 Wall. 459, 463, 20 L. Ed. 199; Dow v. Railroad Co., 124 U. S. 652, 8 Sup. Ct. 673, 31 L. Ed. 565. The income earned by the receivers appointed at the suits of the stockholders and of the creditors prior to October 13, 1893, was in like manner free from any equitable lien of the mortgage bondholders. It required a demand of surrender of the income and profits or the filing of a bill of foreclosure to charge this income with the superior lien of the mortgage under its provisions. The result is that the income earned by the receivers prior to October 13, 1893, was applicable to the payment of the unsecured as well as the secured debts; and it rested in the discretion of the court

to direct the application of this income to the same extent that it would have rested in the discretion of the mortgagor to have applied it as it saw fit had no receivers been appointed. The claim of the intervener was for machinery and materials that were necessary in the construction of the improvements and extensions required to maintain the successful operation of these waterworks. The machinery and materials thus furnished undoubtedly enabled the company to increase its income, and they have now become a part of the corpus of the mortgaged property. It would have been a wise and just application of the moneys earned by the receivers before the filing of the bill of foreclosure to have applied them to the payment of this claim. Upon the appointment of the receivers under the bill of foreclosure, it was clearly within the discretion of the court to order such an application of this fund, and it is not too late to effectually exercise this discretion now. On this ground the prayer of the petition may perhaps be properly granted. But the contention of counsel for the intervener that one who furnishes materials that are required to construct a necessary improvement or extension of a mortgaged plant of an operating public or quasi public corporation thereby acquires an equitable lien on the income earned subsequent to the appointment of the receivers in foreclosure, superior to that of the mortgage bondholders, cannot, in my opinion, be successfully maintained. In support of this view he cites Fosdick v. Schall, 99 U. S. 235, 256, 25 L. Ed. 339; Hale v. Frost, 99 U. S. 389, 25 L. Ed. 419; Miltenberger v. Railroad Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675, 28 L. Ed. 596; Trust Co. v. Souther, 107 U. S. 591, 2 Sup. Ct. 295, 27 L. Ed. 488; and numerous cases from the trial courts. A careful examination of the decisions of the supreme court lends no support to this theory of the counsel. The claim of the Holly Manufacturing Company is not for wages due employés for current operating expenses, or for current debts accruing within a few months prior to the filing of the bill for foreclosure. It is for an unpaid balance of about 33 per cent. of an account for engines and materials furnished the mortgagor more than 30 months before the bill for foreclosure was filed, to enable it to construct permanent improvements and extensions, more costly and more valuable than the original plant, in order that it might successfully maintain and operate its works. It is true that in Fosdick v. Schall, supra, Chief Justice Waite, in delivering the opinion of the supreme court, said:

"We have no doubt that, when a court of chancery is asked by railroad mortgagees to appoint a receiver of railroad property pending proceedings for foreclosure, the court, in the exercise of a sound judicial discretion, may, as a condition of issuing the necessary order, impose such terms in reference to the payment from the income during the receivership of outstanding debts for labor, supplies, equipment, or permanent improvement of the mortgaged property as may, under the circumstances of the particular case, appear to be reasonable. Railroad mortgages and the rights of railroad mortgagees are comparatively new in the history of judicial proceedings. They are peculiar in their character, and affect peculiar interests. * * * The business of all railroad companies is done to a greater or less extent on credit. This credit is longer or shorter as the necessities of the case require; and

when companies become pecuniarily embarrassed it frequently happens that debts for labor, supplies, equipment, and improvements are permitted to accumulate in order that bonded interest may be paid, and a disastrous foreclosure postponed, if not altogether avoided. In this way the daily and monthly earnings, which ordinarily should go to pay the daily and monthly expenses, are kept from those to whom in equity they belong, and used to pay the mortgage debt. The income out of which the mortgagee is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment, and useful improvements."

But it is a curious fact that all of these remarks, on which courts are constantly urged to base orders for the preference of unsecured to secured creditors in the application of the income earned during receiverships in foreclosure, were obiter dicta, and that the supreme court has ever since they were delivered been industriously engaged in limiting their terms and restricting their effect, until the circuit court of appeals of the Fourth circuit, in Bound v. Railway Co., 7 C. C. A. 322, 58 Fed. 473, 480,—a case decided by Chief Justice Fuller and Judges Hughes and Morris,—declared in 1893 that:

"The supreme court has recently, in Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663, indicated the narrow limits to which an equity court should confine itself in allowing any unsecured claim to displace vested contract liens. Wages due employés, current operating expenses, current balances of ticket and freight money arising from indispensable business relations, and similar current debts accruing within ninety days, are recognized as among the limited class of claims which, in its discretion, the court may allow to have priority."

In that case the Lackawanna Iron & Coal Company sold to a railroad company, 18 months before the receivership, necessary steel rails to the amount of $50,255.93, on the promise of the railroad company to pay this claim out of its earnings. $33,960 of the earnings were nevertheless used to pay interest on the bonds, and the circuit court held this to be a diversion of the income, and gave the iron company a prior lien for that amount on the proceeds of the sale of the mortgaged property. The circuit court of appeals reversed this decision, and declared that the rule giving preference to current expenses incurred on the faith of the earnings of a railroad shortly before the appointment of a receiver had never been carried so far.

The decision in Fosdick v. Schall, 99 U. S. 255, 25 L. Ed. 339, is neither based upon nor supported by the remarks of Chief Justice Waite which we have quoted above, and upon which counsel for the intervener so much relies. That decision was that a claim of the vendor of cars for their rent for six months immediately prior to the receivership, which was paid as a part of the purchase price of the cars, had no equitable lien on the proceeds of the mortgaged property superior to that of the mortgage bondholders, and the decree of the circuit court giving it such a preference was reversed.

In Hale v. Frost, 99 U. S. 392, 25 L. Ed. 419, the supreme court held that a claim for current supplies furnished the machinery department of a railroad company just preceding the receivership was entitled to a lien on the income superior to that of the mortgage bond holders, but that a claim for material for construction purposes was entitled to no such preference.

In Miltenberger v. Railroad Co., 106 U. S. 286, 308, 311, 1 Sup. Ct. 140, 27 L. Ed. 117, the supreme court sustained a decree which directed the receivers operating the mortgaged property to pay out of the proceeds of the sale of mortgaged property the arrears due for operating expenses for a period not exceeding 90 days prior to the appointment of a receiver, and an amount not exceeding $10,000 to other conecting lines of road in settlement of ticket and freight balances and for materials and repairs that had accrued, in part, more than 90 days before the bill for foreclosure was filed.

In Trust Co. v. Souther, 107 U. S. 591, 593, 595, 2 Sup. Ct. 295, 27 L. Ed. 488, it was held that the court appointing a receiver might properly order him, before paying the mortgage debt, to pay out of the proceeds of the mortgaged property all amounts owing by the railroad company for labor or supplies that accrued in the operation and maintenance of the railroad within six months of the appointment of the receiver, in a case in which the receiver had used the net income in making permanent repairs and improvements upon the property instead of discharging these claims.

In Burnham v. Bowen, 111 U. S. 776, 783, 4 Sup. Ct. 675, 28 L. Ed. 596, the decision was that, in a case in which the income of the receivership had been diverted to pay for the right of way, the court might charge a claim for fuel necessarily furnished to and used by the railroad company in operating its road within 12 months prior to the receivership as a first lien on the mortgaged property, but Chief Justice Waite added:

"We do not now hold, any more than we did in Fosdick v. Schall, or Huidekoper v. Locomotive Works, 99 U. S. 258, 260, 25 L. Ed. 344, that the income of a railroad in the hands of a receiver, for the benefit of mortgage creditors who have a lien upon it under their mortgage, can be taken away from them and used to pay the general creditors of the road. All we then decided and all we now decide is that, if current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of the fund which has been thus improperly applied to their use." Page 783, 111 U. S., page 679, 4 Sup. Ct., and page 599, 28 L. Ed.

In Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963, it was held that the wages of employés for a limited time before the receivership might be preferred to the mortgage bondholders in the distribution of the proceeds of the mortgaged property.

In Trust Co. v. Morrison, 125 U. S. 591, 612, 8 Sup. Ct. 1004, 31 L. Ed. 825, a preference in the distribution of the proceeds of the sale of the mortgaged property was allowed to a surety who had executed a bond for an injunction that enabled the railroad company to prevent the sale of its rolling stock on execution; but Mr. Justice Bradley in the opinion quoted the remark of Chief Justice Waite in Burnham v. Bowen which appears above, and declared that it was not the intention of the court to decide anything in conflict with that declaration.

In St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I. R. Co., 125 U. S. 658, 673, 8 Sup. Ct. 1011, 31 L. Ed. 832, the supreme court refused to make the amount due for the rental of track used by the

mortgagor before the appointment of the receiver a preferred claim to that of the bondholders upon the proceeds of the mortgaged property. In the opinion Mr. Justice Matthews thus enumerates the claims that may be preferred in the distribution of the income:

"It is undoubtedly true that operating expenses, debts due to connecting lines growing out of an interchange of business, and debts due from the use and occupation of leased lines are chargeable upon gross income before that net revenue arises which constitutes the fund applicable to the payment of the interest on the mortgage bonds." Page 673, 125 U. S., page 1017, 8 Sup. Ct., and page 837, 31 L. Ed.

In Railroad Co. v. Hamilton, 134 U. S. 296, 301, 10 Sup. Ct. 546, 33 L. Ed. 905, the supreme court held that one who had constructed a dock upon the land of the railroad company at its instance after the execution and recording of its mortgage had no equitable lien superior to that of the mortgage bondholders on the property or its proceeds. In that case the opinion in Dunham v. Railroad Co., 1 Wall. 254, 267, 17 L. Ed. 584, is quoted with approval. The court in the latter case, which presented a question of priority between a mortgagee and a contractor who had expended money and labor in building a railroad under a subsequent agreement with the railroad company, said:

"Contractor, under the circumstances, could acquire no greater interest in the road than was held by the company. He did not exact any formal conveyance, but, if he had, and one had been executed and delivered, the rule would be the same. Registry of the first mortgage was notice to all the world of the lien of the complainant, and in that point of view the case does not even show a hardship upon the contractor, as he must have known when he accepted the agreement that he took the road subject to the rights of the bondholders."

In Kneeland v. Trust Co., 136 U. S. 89, 98, 10 Sup. Ct. 950, 34 L. Ed. 379, the supreme court refused to prefer a claim for the rental of rolling stock for the three months prior to the filing of the bill for foreclosure to the mortgage debt, in the distribution of the proceeds of the sale of the property, although the rolling stock was used during that time by a receiver of the railroad company appointed on a creditors' bill. Mr. Justice Brewer, in delivering the opinion of the court, said:

"One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which by the rulings of this court have been declared to have an equitable priority. No one is bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens." Pages 97, 98, 136 U. S., page 953, 10 Sup. Ct., and page 383, 34 L. Ed.

In Thomas v. Car Co., 149 U. S. 95, 110, 112, 13 Sup. Ct. 824, 37 L. Ed. 663, a preference in the distribution of the proceeds of a mort-

gaged railroad was denied to·a claim for the use of· cars for six months prior to the receivership. Mr. Justice Shiras, in delivering the opinion of the court, quoted with approval the portion of the opinion in Kneeland v. Trust Co., to which reference has been made, and added:

"The case of a corporation for the manufacture and sale of cars, dealing with a railroad company whose road is subject to a mortgage securing outstanding bonds, is very different from that of workmen and employés, or of those who furnish from day to day supplies necessary for the maintenance of the railroad. Such a company must be regarded as contracting upon the responsibility of the railroad company, and not in reliance upon the interposition of a court of equity." Page 112, 149 U. S., page 831, 13 Sup. Ct. and page 669, 37 L. Ed.

In Wood v. Safe-Deposit Co., 128 U. S. 416, 421, 9 Sup. Ct. 131, 32 L. Ed. 472, the supreme court declared that the doctrine of Fosdick v. Schall had never been applied .in any case except that of a railroad. The insolvent corporation in that case was a waterworks company, and one Starr had paid 117 coupons with funds which he had raised for the purpose of paying the expense of constructing the waterworks. It was his primary duty to apply these funds to defray the expenses of construction, and the appellants, contractors to whom Starr had subsequently delivered the coupons in payment for materials they had furnished for the construction of the plant, insisted that Starr's failure to apply the money to the payment of the expenses of construction was a diversion of the fund which entitled them to priority, under the doctrine of Fosdick v. Schall. Mr. Justice Lamar answered this claim in these words:

"The argument is unsound. There are several answers to it: First, it overlooks the vital distinction between a debt for construction and one for operating expenses. The doctrine of Fosdick v. Schall is applicable wholly to the latter class of liabilities."

It is perhaps impossible, and if possible it would be unwise, to draw the line of demarkation between claims that may and those that may not be preferred to the mortgagee's in payment out of the income earned by an insolvent corporation after receivers in foreclosure are appointed, or out of the corpus of the property. The special circumstances of each case will necessarily and rightfully influence the discretion of the court. This much the authorities we have reviewed seem to indicate: First. The chancellor may, in his discretion, charge upon the income earned after the appointment of receivers in foreclosure, or upon the corpus of the property, as prior liens to that of the mortgagee, the current operating expenses of a railroad corporation for a limited time anterior to the receivership, and the claims of sureties who have executed bonds to prevent forced sales of the property. Hale v. Frost, 99 U. S. 389, 392, 25 L. Ed. 419; Miltenberger v. Railroad Co., 106 U. S. 286, 308, 311, 1 Sup. Ct. 140, 27 L. Ed. 117; Trust Co. v. Souther, 107 U. S. 591, 593, 595, 2 Sup. Ct. 295, 27 L. Ed. 488; Burnham v. Bowen, 111 U. S. 776, 783, 4 Sup. Ct. 675, 28 L. Ed. 596; Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963. Second. One who furnishes materials and labor, in the face of a recorded mortgage, under a subsequent agreement with

the mortgagor, for the purpose of constructing extensive and permanent improvements necessary to the maintenance and operation of the works of a quasi public corporation, does not necessarily thereby acquire an equitable lien superior to that of the mortgagees on the mortgaged income of the corporation earned after the appointment of receivers in foreclosure, or upon the corpus of the property mortgaged. Dunham v. Railroad Co., 1 Wall. 254, 267, 17 L. Ed. 584; Hale v. Frost, 99 U. S. 389, 392, 25 L. Ed. 419; Railroad Co. v. Hamilton, 134 U. S. 296, 301, 10 Sup. Ct. 546, 33 L. Ed. 905; Kneeland v. Trust Co., 136 U. S. 89, 98, 10 Sup. Ct. 950, 34 L. Ed. 379; Thomas v. Car Co., 149 U. S. 95, 110, 112, 13 Sup. Ct. 824, 37 L. Ed. 663; Bound v. Railway Co., 7 C. C. A. 322, 58 Fed. 478, 480; Wood v. Safe-Deposit Co., 128 U. S. 416, 421, 9 Sup. Ct. 131, 32 L. Ed. 472. Third. Mortgagees of income who have stipulated in their mortgage that the mortgagor shall have possession until default ordinarily acquire no right, as against the mortgagor or its creditors, to the income, or an accounting concerning it, until they demand its surrender or file a bill for the foreclosure of their mortgage. Railroad Co. v. Cowdrey, 11 Wall. 459, 463, 20 L. Ed. 199; Dow v. Railroad Co., 124 U. S. 652, 8 Sup. Ct. 673, 31 L. Ed. 565. In view of these rules, the claim of the intervener is not allowed a preference upon the ground that it acquired an equitable lien upon the income of this insolvent corporation earned subsequent to the appointment of receivers in foreclosure, by furnishing its machinery and materials for the construction of the improvements and extensions of the waterworks company. It is allowed this preference under the third rule. It is a meritorious claim. It is for engines and materials which have become a part of the mortgaged property, and which both enhance the security and increase the income of the mortgagees. The waterworks company had reduced this claim from $149,000 to about $44,000, and would probably have fully paid it had not its property and income been seized by the receivers of this court 20 months before the complainant made any demand for the possession of the income under the mortgage and its foreclosure. During that 20 months the waterworks company was prevented from paying this claim by the possession of this court. More than $100,000 of its income was collected before the foreclosure bill was filed and appropriated by the receivers appointed by this court to the payment of interest on the bonded debt, and when the bill for foreclosure was filed $55,000 of income had been earned, which was subsequently collected by the receivers in the foreclosure proceedings. To this portion of the income the bondholders had no lien or claim superior to that of the intervener, because they had failed to demand possession of this income or to file their bill for foreclosure. It would have been just and equitable to have appropriated a sufficient amount of this fund to pay the claim of the intervener at the time the receivers in foreclosure were appointed. It is not too late to do so now. The receivers under the foreclosure proceedings have collected this fund earned before the foreclosure bill was filed, and have appropriated it to the benefit of the mortgagees. They now have on hand a sufficient amount of the income

subsequently collected to restore this amount, and an order for the payment of this claim from the income now in their possession will practically do so. Such an order will accordingly be made.