## NILES TOOL WORKS CO. v. LOUISVILLE, N. A. & C. RY. CO.

(Circuit Court of Appeals, Seventh Circuit.   January 7, 1902.)

No. 772.

RAILROADS—FORECLOSURE OF MORTGAGE—PREFERENTIAL DEBTS.

A claim for the price of machinery sold to a mortgagor railroad company, and used by it in the construction of shops owned by a second company, under a contract by which the mortgagor secured their use by lease and also the stock of the second company, is not entitled to priority of payment over the mortgage debt in a foreclosure suit as a preferential claim, where there was no surplus of income from the receivership, no diversion of current income was shown, and the shops so built never passed under the mortgage, and were not included in the foreclosure decree or sale.

Appeal from the Circuit Court of the United States for the District of Indiana.

The appellant, the Niles Tool Works Company, filed an intervening petition in the consolidated foreclosure action of the Farmers' Loan & Trust Company and John H. Barker against the Louisville, New Albany & Chicago Railway Company (for brevity called the New Albany Company) et al., for an indebtedness contracted by the last-named company, and claimed by the intervener to be a preferred claim. On the hearing of the report thereon of a special master and of the exceptions thereto, the circuit court confirmed the report in so far as it recommended that the intervener recover the sum of $3,309.67, with interest, but disapproved the same in respect of its allowance as a preferential claim, and decreed accordingly that the claim be allowed "as a general claim, without preference, pari passu with all other claims not entitled to preference." This appeal is from the denial of the claim as preferred. The claim is for three boilers furnished by the appellant to the New Albany Company, under contract in writing, the last delivery upon the contract being made January 15, 1896, but the master finds that they were not erected in accordance with the contract until March 7, 1896; and the boilers were purchased and used by the New Albany Company in the construction of shops at La Fayette, Ind., under an arrangement with the La Fayette & Monon Railway Company (hereinafter called the La Fayette Company), and under the following circumstances: The La Fayette Company received a subsidy from the township to aid in the construction of its proposed short line of railroad and shops at La Fayette, and, having purchased right of way and ground for the location of shops out of such subsidy, entered into contract with the New Albany Company whereby the latter company agreed to furnish and construct the road, tracks, and car shops, and accept in full payment therefor the remainder of the subsidy and the entire capital stock of the La Fayette Company, and such contract was performed by both parties. The capital stock of the La Fayette Company so received by the New Albany Company was hypothecated by the latter company to secure a loan, and the title subsequently passed thereunder, so that no interest in such stock came to the mortgagee or entered into the foreclosure proceeding in controversy. Pursuant to the arrangement thus made, the New Albany Company entered into possession and use of the shops at La Fayette, with the title remaining in the La Fayette Company, except as to a tract of three acres, and abandoned its shops theretofore held at New Albany, from which machinery was removed to the La Fayette shops, but no part of this La Fayette property was included in the mortgage foreclosure or sale. The original action against the New Albany Company was a creditors' bill, under which the receiver was appointed August 24, 1896. On November 12, 1896, bills were filed to foreclose several mortgages against the New Albany Company, which were consolidated under the present title, the receivership was extended accordingly, and final decree of

foreclosure was entered therein January 23, 1897, which provided, among other matters, that the purchaser at the sale should pay all receiver's indebtedness and claims which should be allowed by the court as "prior in lien to the mortgages foreclosed." The sale was made March 10, 1897, and the purchasers organized the Chicago, Indianapolis & Louisville Railway Company, and entered into possession of the property thus acquired. The intervener's petition was filed May 3, 1897.

F. F. Moore, for appellant.

G. W. Kretzinger, for appellee.

Before JENKINS, Circuit Judge, and BUNN and SEAMAN, District Judges.

SEAMAN, District Judge, after the foregoing statement, delivered the opinion of the court.

The appellant is an unsecured creditor of the New Albany Company, and the sole question involved in this appeal is whether its claim is entitled to priority over the interest of the mortgagees which was acquired by the purchasers under the foreclosure decree and sale. The indebtedness was in no sense incurred by the receiver, and there is no showing or claim of surplus income derived during the receivership; and while it is contended on behalf of the appellant that unincumbered assets of the New Albany Company are within the custody of the court, which should be administered for the benefit of the claim if priority is not allowable, such contention is neither sustainable under the facts of record nor raised by the assignment of errors. Aside, therefore, from the secondary question whether the indebtedness was incurred within the period of six months preceding the receivership in the case, the claim for the purchase price of the boilers which were furnished to the mortgagor company cannot be allowed priority, and thus displace the mortgage liens, unless the contract of purchase and its subject-matter come within the limited class of expenditures for which such allowance is authorized. The boilers so furnished by the appellant entered into the construction by the New Albany Company of car shops for the La Fayette Company, at La Fayette, Ind., under an arrangement for earning certain municipal aid which was offered the latter company, with ownership of the property held in the name of the La Fayette Company, but its use by the New Albany Company was secured through a long-term lease. Under the contract for the erection of the shops and other work the La Fayette Company transferred to the New Albany Company the amount received as municipal aid, less the portion thereof used in the purchase of real estate required for the purpose, together with the entire capital stock of the La Fayette Company, and the New Albany Company then borrowed the sum of $100,000, and pledged this stock as collateral security for the loan. The record does not show that earnings of the New Albany Company were either used or promised in carrying out this arrangement, but it does show that neither the proceeds of the contract nor the ownership of the shops came to the mortgagees of that company, that the La Fayette property was not included in the foreclosure decree or sale, and that any title thereto which may have been acquired by the new company is derived from

other sources. Performance of this contract cannot be classified as an operating expense of the New Albany railroad, and the alleged fact that a portion of the machinery which entered into the construction of the new shops came from the abandoned New Albany shops does not establish a case of railroad repairs.

On the facts thus appearing we are of opinion that no foundation exists for priority of the appellant's claim to make it chargeable against the purchasers under the foreclosure decree, and that the order of the circuit court thereupon is sustained by the entire line of authorities. Reversal is sought on the authority of expressions in the early case of Fosdick v. Schall, 99 U. S. 235, 252, 25 L. Ed. 339, upon which, as remarked in the brief on its behalf, the "appellant anchors its faith"; but the contention ignores the distinctions which are there pointed out as grounds for the preference, and is untenable as well under that decision as it clearly is under the uniform line of later authorities. In Fosdick v. Schall the doctrine is recognized, as fully exemplified in the later cases, that the mortgagee of a railroad company is entitled to the net income only to be applied in payment of interest or principal of the mortgage indebtedness; that there is an implied agreement that the current income shall be first applied to payment of the necessary operating expenses of the road, and an equitable lien thus arises in favor of debts for current expenses, which will be enforced to displace mortgage liens within reasonable limitations; and, as remarked in International Trust Co. v. T. B. Townsend Brick & Contracting Co., 37 C. C. A. 396, 405, 95 Fed. 850, 859, "the doctrine thus stated is the foundation of the 'diversion' or 'restoration' doctrine applied in the later cases." So the rule which was actually applied in Fosdick v. Schall was in conformity with such doctrine, and, while it is true that remarks in the opinion indicate that "proper equipment and useful improvements" may be chargeable against the gross earnings, the ground for such possible exception is thus stated:

"If, for the convenience of the moment, something is taken from what may not improperly be called the 'current debt fund,' and put into that which belongs to the mortgage creditors, it certainly is not inequitable for the court, when asked by the mortgagees to take possession of the future income and hold it for their benefit, to require as a condition of such order that what is due from the earnings to the current debt shall be paid by the court from the future current receipts before anything derived from that source goes to the mortgagees." 99 U. S. 252, 25 L. Ed. 342.

This suggestion of contingencies which may enlarge the exception in favor of preferences, if consistent with the later decisions, does not support the appellant's claim, for the reason that neither of the conditions so indicated appears in the present record. Since that opinion, however, the rule has become firmly established that indebtedness contracted by the mortgagor for improvements which are work of original construction, and not mere repairs, cannot displace the mortgage liens, though the mortgaged property is thereby improved. Porter v. Steel Co., 120 U. S. 649, 671, 7 Sup. Ct. 741, 30 L. Ed. 830; Wood v. Safe Deposit Co., 128 U. S. 416, 421, 9 Sup. Ct. 131, 32 L. Ed. 472; Railroad Co. v. Hamilton, 134 U. S. 296, 301, 10 Sup. Ct. 546, 33 L. Ed. 905; Thomas v. Car Co., 149 U. S. 95, 111, 13 Sup. Ct.

824, 37 L. Ed. 663. Moreover, the recent cases of Southern Ry. Co. v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458, and Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., 176 U. S. 298, 20 Sup. Ct. 363, 44 L. Ed. 475, in which the authorities are reviewed, have settled the doctrine that preference cannot be allowed, unless "the debt was one fairly to be regarded as part of the operating expenses of the railroad, incurred in the ordinary course of business, and to be met out of the current receipts." Applying either rule to the claim in controversy, the preference was rightly denied, and the decree accordingly is affirmed.