SOUTHERN RY. CO. v. ENSIGN MFG. CO.

CENTRAL TRUST CO. et al. v. RICHMOND & D. R. CO. et al.

(Circuit Court of Appeals, Fourth Circuit.   July 10, 1902.)

No. 449.

1. CONTRACT—PARTIES—PURCHASE OF RAILROAD EQUIPMENT BY LESSEE.

The general purchasing agent of a railroad company ordered certain equipment to be furnished to his company from a manufacturer with whom he customarily dealt, but directed the bills therefor to be made against another company, whose lines his own company operated under a lease. Such lease provided that where new equipment was needed, and was agreed on between the two companies, the same should be furnished by the lessor; but it did not appear that any such agreement was made with respect to that in question. The equipment was shipped as ordered. *Held*, that the lessee, and not the lessor, was the purchaser.

2. RAILROADS—RECEIVERSHIP—PREFERENTIAL DEBTS.

Three things are necessary in order to give a claim for supplies against a railroad company, in the hands of a receiver, a preference over the mortgage lien: (1) That the supplies furnished must be of that ordinary character necessary for operating a railroad and keeping the mortgaged property a going concern; (2) that the person furnishing them relied upon the interposition and protection of his equity by the court, and did not contract upon the personal responsibility of the railroad company; (3) that the debt was contracted but a short time before the appointment of the receivers, and was left unpaid because of the sudden action of the court in making such appointment.

8. SAME.

One furnishing car wheels under a contract with a railroad company, relying upon being paid for the same in 60 or 90 days in accordance with a previous course of dealing, and with knowledge that they were to be used in repairing the equipment of a leased road, while he has a legal claim therefor against the company, has no equity which entitles him to preference of payment over its mortgagees, whose mortgages do not include the leased road, and where the receivers appointed in the foreclosure suit did not take possession of, nor operate, the same.

Appeal from the Circuit Court of the United States for the Eastern District of Virginia, at Richmond.

This case comes up on appeal from the circuit court of the United States for the Eastern district of Virginia.  The questions in the case arise in the administration of the affairs of the Richmond & Danville Railroad Company, in the consolidated cause of Central Trust Company of New York v. Richmond & Danville Railroad Company.  This consolidation was of two causes, one known as "Clyde v. Richmond & Danville Railroad Company," brought by stockholders and unsecured creditors, and the other by the Central Trust Company against the same defendant, seeking foreclosure of a mortgage executed October 22, 1886, by the railroad to secure certain bonds.  This mortgage covered the main line and property of the Richmond & Danville Railroad Company, between Richmond and Danville, all its rights in the Richmond, York River & Chesapeake Railroad, all of its rights in the Piedmont Railroad, and all its leasehold interest in the Virginia Midland Railway, the Western North Carolina Railroad, the Charlotte, Columbia & Augusta Railroad, and the Greenville & Columbia Railroad.  The decree of foreclosure was entered.  Among its provisions was the following: "The purchaser or purchasers at said sale shall also, as part of the consideration, in addition to the payment of the sum or sums bid, take the property purchased upon the express condition that he or they, or his or their assigns, approved by the court, will pay off and satisfy all debts or obligations, incurred or to be

117 F.—27

incurred by the receivers having possession of such property, which have not been or shall not be paid by said receivers, and which shall be adjudged by this court to be debts or obligations properly chargeable against the property purchased, and to be prior or superior to the lien of said mortgage of October 22, 1886." Receivers had theretofore been appointed, first under the Clyde bill, June 15, 1892, and then under the consolidated bill, April 13, 1894. The sale took place, the Southern Railway Company became the purchaser, and the sale was confirmed June 15, 1894. On June 28, 1892, special masters were appointed, before whom claims coming within the order of sale could be presented and proved. On November 23, 1892, the Ensign Manufacturing Company filed with Messrs. Pleasants and Atkins, the special masters, its claim under the order of reference. From time to time it made inquiry as to the result of its application. Receiving no satisfactory reply, finally on July 18, 1901, it filed its petition in the consolidated cause, seeking payment of its claim. The petition was answered. The cause was heard before A. B. Dickinson, who had succeeded Messrs. Pleasants and Atkins as special master, and the claim was allowed by him in the sum of $1,590. Exceptions were taken to the report, were heard by the circuit court, were overruled, and the report was confirmed. Leave to appeal was given, and the cause is here on the assignments of error.

One of the grounds of defense, included in exceptions to the report of the special master and in the assignments of error, is laches on the part of the Ensign Manufacturing Company in pressing its claim after filing it with the special masters. The record discloses no ground for such a charge, and we concur in this respect with the court below. The claim is based upon three orders of Joseph Minetree, styling himself "General Purchasing Agent of the Richmond & Danville Railroad Company." Two of these orders are for car wheels, and the other is for car wheels and spoke truck wheels. This is the form of one of the orders (the others are precisely similar, except as to dates and amounts):

"Order No. 9,994.

"Please Put This No. on Your Invoice and Make All Invoices in Triplicate.

"Joseph P. Minetree, General Purchasing Agent, Richmond & Danville Railroad Company.

"Office of General Purchasing Agent, Atlanta, Ga., Oct. 17, 1891.

"Ensign Manf. Co., Huntington, W. Va.: Please furnish the Richmond & Danville Railroad Company with the following supplies, viz.: 100 33" Passgr. Car Wheels Bored 5". Make bill against Central Railroad of Georgia. Prepay freight to Rich'd, Va. Guaranties herewith. Ship via C. & O., via R. & D. at Richmond, Va., and Central R. R. at Augusta, Ga. Mark: 'Richmond & Danville R. R. Co. To D. D. Curran, Supt., Care of F. H. McGee, M. M., Macon, Ga.' Joseph P. Minetree, General Purchasing Agent.

"Acknowledged."

One order has direction to ship to "B. C. Epperson, Supt., care G. W. O'Brien, M. M., Augusta, Ga."; another, to "D. D. Curran, Supt., care of F. H. McGee, M. M., Macon, Ga."; the third, to "B. C. Epperson, Supt., care E. M. North, Storekeeper, Augusta, Ga."

The Ensign Manufacturing Company for some time had had frequent dealings with the Richmond & Danville Railroad Company, furnishing the railroad company with supplies of this character. It is alleged, and not seriously denied, that these articles were purchased to be used on the system of the Central Railroad & Banking Company of Georgia. They were charged on the books of the Ensign Manufacturing Company to this last-named company, and an effort was made to collect the bill. This failing, the claim comes here. At the date of this purchase and the delivery of the goods the railroad part of the system of the Central Railroad & Banking Company of Georgia was operated by the Richmond & Danville Railroad Company under the terms of a lease executed by the former company to the Georgia Pacific Railroad Company, and by it turned over to the Richmond & Danville Railroad Company. This lease was dated June 1, 1891. Whether this lease was valid or not (and that has been a subject of controversy not now concerning

us), under its operation the railroad property of the Central Railroad & Banking Company was managed and controlled by the Richmond & Danville Railroad Company from June 1, 1891, to March, 1892. The rental under the lease was to be paid in the shape of meeting all increments of interest on the obligations of the Central Railroad & Banking Company, and a further sum in cash of $625,000 per annum, being a dividend of 7 per cent. on its capital stock. Neither this lease nor any part of the property of the system of the Central Railroad & Banking Company of Georgia was included in the mortgage foreclosed in the main cause, and no part of it, or of the lease, ever came into the hands of the receivers in the main cause or of the purchaser under the sale for foreclosure.

Willis B. Smith, for appellants.

Wyndham R. Meredith, for appellees.

Before SIMONTON, Circuit Judge, and BRAWLEY and WADDILL, District Judges.

SIMONTON, Circuit Judge (after stating the facts as above). Our first inquiry is, between whom was the contract of purchase of these goods? Was the Richmond & Danville Railroad Company, or the Central Railroad & Banking Company, the purchaser? The goods were delivered upon an order of the general purchasing agent of the Richmond & Danville, with whom the Ensign Manufacturing Company had had long and frequent dealing, and in the regular course of that dealing. The goods were shipped upon that order, and as directed in that order. The Richmond & Danville did not profess to be acting as agent for the Central Railroad & Banking Company, and in fact had no authority to act as such agent. One of the express terms of the lease was that when additional equipment was needed for the lessee, and its supply demanded by the lessee, and the lessor shall agree that such additional equipment is necessary, the moneys requisite to pay for the same shall be provided by the lessor. There is no evidence in the record of such demand, or of any concurrence in the necessity for it. So the contract was between the Ensign Manufacturing Company and the Richmond & Danville Railroad Company. This being so, the direction upon the order, "Make bill against Central Railroad," could only have been intended to direct the purchasing company upon what part of the property it was operating the goods were to be used and against whom in its own books they were to be charged,—a part of its system of bookkeeping.

But this does not constitute the case. The vital question is: Granting that this is in law a debt of the Richmond & Danville Railroad Company, is it in the class of those favored debts to which the court gives a claim prior in lien to the mortgage foreclosed in this suit? It will not do to stand upon the legal demand. Were this the case, the legal demand of the bondholder, secured by his recorded mortgage, must prevail. The intervener must rely on its equity, and then the question arises, can this equity be asserted against the mortgagees of the Richmond & Danville Railroad Company and the Southern Railway Company, its purchaser, or is it more properly an equity to be asserted against the Central Railroad & Banking Company of Georgia? The supreme court of the United States, in Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, and the many cases following it,

applying the principles therein established, has recognized an equity in creditors, who supplied a railroad company with labor and supplies necessary to keep it a going concern, to be reimbursed from earnings of such road in the hands of a receiver. This equity is held to be superior to the claims of the mortgage creditors. Sometimes it is so potent as to justify payment out of the corpus of the property, in the absence of earnings. The reason for this exceptional rule, which is applied only to railroads, is because of their quasi public character. They obtain and use certain franchises granted by the public, and in consideration thereof must subserve the interests of the public. Especially must every railroad be kept a going concern. To this end, their earnings are first applied to debts incurred for labor and supplies necessary to keep the road in actual operation. In this way not only is the public interest served, but the value of the property covered by the mortgage is maintained, and the interests of all concerned not allowed to go to ruin. Southern Ry. Co. v. Carnegie Steel Co., 176 U. S. 289, 20 Sup. Ct. 347, 44 L. Ed. 458. In this way those furnishing such necessary labor and supplies are assured that, even if the railroad should unexpectedly go into the hands of receivers, the earnings thereafter will be applied to meet their demands; and if, in the operation of a railroad by a receiver, earnings which should have been used in meeting obligations for current supplies are diverted from this purpose, and are used for the advantage of the mortgage creditors, such diversion must be made good, even if it be necessary to encroach upon the corpus of the mortgaged property. Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675, 28 L. Ed. 596; Trust Co. v. Morrison, 125 U. S. 591, 8 Sup. Ct. 1004, 31 L. Ed. 825; St. Louis, A. & T. H. R. v. Cleveland, C., C. & I. R. Co., 125 U. S. 658, 8 Sup. Ct. 1011, 31 L. Ed. 832; Southern Ry. Co. v. Carnegie Steel Co., supra. The rule is expressed in terse form in Burnham v. Bowen, supra:

"If current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of the fund which has thus been applied improperly to their use."

In Kneeland v. Trust Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379, the general doctrine was recognized. But the court, speaking with emphasis of the sacred character of vested liens, declared that the rule should be applied only in a few specified and limited cases. In Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663, the doctrine of Fosdick v. Schall was recognized, but was not applied, because the party seeking the preference over the mortgage lien had contracted upon the responsibility of the railroad company, the mortgagor, and not in reliance upon the interposition of a court of equity. In Virginia & A. Coal Co. v. Central R. & Banking Co., 170 U. S. 355, 18 Sup. Ct. 657, 42 L. Ed. 1068, a rule is laid down reconciling Burnham v. Bowen and Thomas v. Car Co. See Niles Tool Works Co. v. Louisville, N. A. & C. R. Co., 50 C. C. A. 390, 112 Fed. 561.

No hard and fast rule has been adopted. Each case depends upon its own circumstances. "Whether the debt was contracted upon the personal credit of the railroad company, without any reference to its

receipts, is to be determined in each case by the amount of the debt, the time and terms of payment, and all other circumstances attending the transaction." Southern Ry. Co. v. Carnegie Steel Co., 176 U. S. 285, 20 Sup. Ct. 358, 44 L. Ed. 458. One of these circumstances upon which great stress is laid is that this equity is applied to such claims only as arose within a reasonable time before the receiver was appointed. Paine v. Railroad Co., 118 U. S. 159, 6 Sup. Ct. 1019, 30 L. Ed. 193; Miltenberger v. Railway Co., 106 U. S. 288, 1 Sup. Ct. 140, 27 L. Ed. 117; Thomas v. Railway Co. (C. C.) 36 Fed. 817; Blair v. Railway Co. (C. C.) 22 Fed. 471. In this last case Judge Brewer says that six months is the longest time within his knowledge that ever has been given. In the opinion of this court in Bound v. Railway Co., 7 C. C. A. 322, 58 Fed. 473, 8 U. S. App. 472, these claims to be preferred are said to be for "those ordinary and necessary current expenses of operating a railway contracted within a short time before a receivership, which by the sudden action of the court in appointing a receiver were left unpaid."

Three things, therefore, are necessary in order to give a claim against a railroad company, in the hands of a receiver, a preference over the mortgage lien: The supplies furnished must be of that ordinary and necessary character for operating a railroad, and keeping the mortgaged property a going concern; that the person furnishing them relied upon the interposition and protection of his equity by the court, and did not contract upon the personal responsibility of the railroad company; that the debt was contracted but a short time before the appointment of the receivers, and was left unpaid because of the sudden action of the court in making such appointment.

Taking these up in their order: The car wheels, no doubt, were of that character of supplies necessary for the operation of a railroad; but in the case before us an equity is claimed, superior to the vested lien of these mortgagees of the Richmond & Danville Railroad. The supplies were not furnished for the use of any railroad on which these mortgagees had a lien, nor for the benefit of any such railroad. On the contrary, they were furnished to the Richmond & Danville Railroad, in the performance by it of the obligations it assumed for the Georgia Pacific Railroad Company to the Central Railroad & Banking Company, and were on the latter road, in which these mortgagees and the receivers appointed at their instance had no interest whatever, and from which there is no evidence in the record that they derived any benefit. The claim does not come within "those ordinary and current expenses of operating a railroad," referred to in Bound v. Railway Co., supra. In this respect the case differs essentially from Southern Ry. Co. v. Carnegie Steel Co., supra, in which case the steel rails upon which claim was made were furnished for the use of the mortgaged property, came into the hands of the receivers, were used by them, and at the sale went into the hands of the purchasers.

Did the Ensign Manufacturing Company furnish these goods, relying upon the interposition and protection of their equity by the court, or did they contract upon the personal responsibility of the Richmond & Danville Railroad Company? On this point Mr. Ensign, the manager of this company, speaks as follows:

"I further desire to state that the supplies furnished to the Richmond & Danville Railroad Company, being car wheels and in small lots, and being sent to different points along the line of its road, were furnished because of the fact that the Ensign Manufacturing Company had had a running account with the Richmond & Danville Company for a number of years, and had been engaged in making and shipping car wheels, and would fill orders from time to time from the said Richmond & Danville Railroad Company, and ship them wherever and to whatever points the said Richmond & Danville Railroad Company, or its purchasing agent, desired, without question as to who would pay the same, looking to the Richmond & Danville Railroad Company, and the current receipts of the road for payment for said supplies. These supplies were usually paid for in the course of 60 or 90 days. Payments were made by checks from the Richmond & Danville Railroad Company office, and while the Ensign Manufacturing Company made out bills for the goods in controversy in this matter, amounting to $1,590, against the Central Railroad & Banking Company of Georgia, it was simply because the Richmond & Danville Railroad Company's purchasing agent so requested it on the orders, and not because the Ensign Manufacturing Company looked to the Central Railroad & Banking Company of Georgia for payment."

It appears from this that the manager knew that the goods were purchased for and were used by the Georgia railroad. In Kneeland v. Trust Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379, the court, animadverting upon the disposition to extend the equitable doctrine of Fosdick v. Schall, says:

"No one is bound to sell to a railroad company, or to work for it. Whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage. * * * It is the exception, and not the rule, that such priority of lien can be displaced. We emphasize the fact of the sacredness of the contract lien."

Following the Kneeland Case, the court, in Thomas v. Car Co., 149 U. S. 110, 13 Sup. Ct. 824, 37 L. Ed. 663 decided that, in order to secure this equity, the creditor must have furnished the supplies relying upon the interposition of the court. In Southern Ry. Co. v. Carnegie Steel Co. the same doctrine is reiterated, having previously been recognized in Virginia & A. Coal Co. v. Central R. & Banking Co., 170 U. S. 355, 18 Sup. Ct. 657, 42 L. Ed. 1068. The same doctrine was applied in this court in Bound v. Railway Co., supra.

So the question comes, were these goods furnished on the credit of the Richmond & Danville Railroad Company,—its personal credit,— or in reliance on this equity? The testimony of Mr. Ensign, above quoted, answers this question. His company had had frequent dealings with the Richmond & Danville Railroad Company, had had a running account with it for years, had filled orders when made, looking to the Richmond & Danville Railroad Company and the current receipts of that road, presenting its bill in 60 or 90 days, and in all previous instances had been promptly paid. The goods had been in this instance charged to the Georgia railroad simply because the purchasing agent of the Richmond & Danville so requested it, and not because the Ensign Company looked to the Georgia road for payment. Now, as the goods furnished under the order of the Richmond & Danville Railroad Company were for the use of the Georgia road, and were actually used by it, the Ensign Company could have relied upon

this equity, and could have asserted it against the current earnings of the Central Railroad & Banking Company of Georgia in priority to its mortgages. Virginia & A. Coal Co. v. Central R. & Banking Co., 170 U. S. 368, 369, 18 Sup. Ct. 657, 42 L. Ed. 1068. The equity exists, notwithstanding the mortgages, notwithstanding the lease which is subordinate to the mortgages, notwithstanding the fact that the Richmond & Danville Railroad Company ordered the goods. It is an equity in favor of the materialman, existing against any person interested in the railroad property, either as owner, lessee, or mortgagee. If, however, the goods were not delivered in reliance on this equity, but because they were ordered by the Richmond & Danville in the satisfactory course of dealing existing between it and the Ensign Company for years, they were delivered on the personal credit of the Richmond & Danville, and under the cases cited above the claim for them cannot be preferred.

The mere fact that the payment for the goods was expected from the earnings of the railroad company is not sufficient to put the equity in motion. See Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., 176 U. S. 303, 20 Sup. Ct. 393, 44 L. Ed. 475; Bound v. Railway Co., supra. This conclusion is strengthened by the fact that the account in this case was made in October and November, 1891, and the receivers were not appointed until August, 1892. We have seen how much stress the court places on the period elapsing between the incurring the debt and the sudden action of the court in appointing a receiver. Indeed, in the order appointing receivers in the main cause, the only current and unpaid pay rolls and vouchers and supply accounts incurred in the operation of the railroad system which they were directed to pay out of the earnings coming to their hands were limited to such as were incurred within six months prior to the date of the order.

The case at bar strongly resembles, if it is not on all fours with, Virginia & A. Coal Co. v. Central R. & Banking Co. of Georgia, 170 U. S. 355, 18 Sup. Ct. 657, 42 L. Ed. 1068. In that case the same purchasing agent of the Richmond & Danville Railroad Company, while that company was operating this Central Road, contracted with the coal company to furnish coal to the Central Railroad for 12 months from July 1, 1891, to July 1, 1892. The coal was furnished. The bill not having been paid, the coal company intervened in a suit in which the receiver of the Central Road and the Richmond & Danville Railroad Company were parties. To its petition for intervention it made both of these parties defendant, and by it sought payment for the coal. They claim against the Richmond & Danville under the contract. That against the Central was through the equity, in that the coal was purchased for the use of, and was used by, the Central Road. The supreme court held that the equity, under which payment for supplies should be paid out of current earnings in the hands of the receiver, existed against the Central Railroad & Banking Company, because the supplies were used in its operation, notwithstanding that the contract of purchase was that of its lessee. As the result of the case, payment was ordered to be made by the company for whose use the goods were brought. No decree was entered against the Richmond & Danville. The court, in fact, held that the legal contract was with the Rich-

mond & Danville, but, when it was sought to enforce the equity, the earnings of the Central were liable to it. So we hold in this case. Although the contract was made with the Richmond & Danville Railroad Company, and the Ensign Manufacturing Company is a creditor thereunder against this company, yet, as the goods were purchased for and were used by another company, no equity exists, as against the mortgagees of the Richmond & Danville, giving the claim priority over them.

The decree of the circuit court is reversed, and the cause is remanded to that court, with instructions to dismiss the petition.

Reversed.