### SOUTHERN RY. CO. v. CHAPMAN JACK CO.

### CENTRAL TRUST CO. et al. v. RICHMOND & D. R. CO. et al.

(Circuit Court of Appeals, Fourth Circuit. July 10, 1902.)

No. 450.

**1. RAILROADS—RECEIVERSHIP—PREFERENTIAL DEBTS.**

Jackscrews purchased by a railroad company for use on its road, within six months prior to the appointment of receivers in a foreclosure suit, are within the terms of the decree making the appointment, requiring the receiver to pay supply accounts incurred in the operation of the road within six months; but the same articles, purchased nearly a year prior to the receivership, for use on a leased road not included in the mortgage, and which did not pass into the hands of the receivers, are not supplies necessary in operating the mortgaged road, and the seller is not entitled to preference in payment over the mortgage debt.

Appeal from the Circuit Court of the United States for the Eastern District of Virginia, at Richmond.

This case comes up on appeal from the decree of the circuit court of the United States for the Eastern district of Virginia. It is one of the cases arising in the administration of the affairs of the Richmond & Danville Railroad Company. The claim is made by the Chapman Jack Company against the Southern Railway Company, purchasers of the property of the Richmond & Danville Railroad Company at the sale made under a decree of foreclosure of the mortgages upon this property. The decree on this point is in these words: "The purchaser or purchasers at said sale shall as part of the consideration of such sale, and in addition to the payment of the sum or sums bid, take the property purchased upon the express condition that he or they would 'protect the security given for the lien of the North Carolina Railroad Company,' and will also pay off and satisfy any and all outstanding and unpaid receivers' certificates or receivers' notes and obligations issued under the order of June 28, 1892, and having priority over the lien of said mortgage of October 22, 1886, and all other claims heretofore filed in this case, or in either of the causes consolidated herein, but only when said court shall allow such claims and adjudge the same to be prior in lien or superior in equity to the mortgage foreclosed in this suit, and in accordance with the order of the court allowing such claims and adjudging with respect thereto." In this connection is inserted a clause from the decree of June 15, 1892, appointing the receivers: "The said receivers shall, from time to time, out of the funds coming into their hands from the operation of the property, pay the expense of operating the same and executing their trusts, and all taxes and assessments upon the said property or any part thereof, and also pay and discharge all such traffic and car mileage balances as may be due to connecting and other

railways, and all such loss and damage claims arising from the previous operation of said property as, in their judgment, on examination, are proper to be paid as expenses of operation, and shall also, out of the moneys coming into their hands, pay and discharge all the current and unpaid pay rolls and vouchers, and supply accounts incurred in the operations of said railroad system, at any time within six months prior hereto." When the receivers were appointed, the court also appointed special masters, who were directed to call in creditors of the Richmond & Danville Railroad Company. This they did, and among others the Chapman Jack Company filed the present claim. There was much delay in examining and passing upon the various claims. Among those so delayed was this of the Chapman Jack Company. It was not finally passed upon until 1901. This delay has been charged as laches upon the part of the claimant; but we concur with the special master and the court below that this charge will not lie. The claim of the Chapman Jack Company is on the following accounts:

Central R. R. & Bkg. Co., to the Chapman Jack Company.

July 13, 1891. 20 Chapman jackscrews, $126, less 33⅓ per cent.. $ 84 00

The Same to the Same.

Aug. 20, 1891. 12 Chapman jackscrews at $3, $36, less 33⅓ per cent ........................................ $ 24 00

Richmond & Danville R. R. Co., to the Chapman Jack Co.

Jan. 28, 1892. 24 Chapman jackscrews, $324, less 33⅓ per cent.. $216 00

The Same to the Same.

April 6, 1892. 12 Chapman jackscrews, $162, less 33⅓ per cent... $108 00

The Chapman jackscrews for the Central Railroad & Banking Company were ordered by the purchasing agent of the Richmond & Danville Railroad Company, and were sold, shipped, and delivered under and because of that order. The Central Railroad & Banking Company was at that time operated by the Richmond & Danville Railroad Company, which had assumed the obligations of the Georgia Pacific Company, which latter company had secured a lease of the property of the Central Railroad & Banking Company. The articles purchased and charged to this last-named company were for use on its road. From all that appears in the record, the articles purchased and charged to the Richmond & Danville Railroad Company were for the use on the property of that company covered by the mortgage foreclosed and purchased by the Southern Railway Company. Special Master Dickinson, who heard the case, reported in favor of the entire claim of the Chapman Jack Company and recommended its payment. The court, hearing his report and the exceptions thereto, concurred with the master and confirmed the report on the whole. The matter comes here on assignments of error.

Willis B. Smith, for appellant.

Wyndham R. Meredith, for appellee.

Before SIMONTON, Circuit Judge, and BRAWLEY and WADDILL, District Judges.

SIMONTON, Circuit Judge (after stating the facts as above). The questions in this case naturally divide themselves.

1. As to the claim against the Richmond & Danville Railroad Company for the articles charged to it in its own name. The articles were in the class of supplies necessary in operating a railroad, and those claims come within the very terms of the order of June 15, 1892, appointing the receivers and stating their duties. They are instructed "from time to time, out of the funds coming into their hands from the operation of the property, to pay and discharge all the current and unpaid pay rolls and vouchers and supply accounts incurred

in the operation of the said railroad system at any time within six months prior hereto." These are supply accounts, incurred February 16, 1892, $216, and April 16, 1892, $108. Both are within the six months provided in the order, and must be paid. In this respect we concur fully with the court below, and on this point its decree is affirmed.

2. The claim for supplies furnished for the use of the Central Railroad & Banking Company stands on a different footing. In one very material point they were not incurred within the six months of the order appointing receivers, bearing date June, 1892. They bear date July 20, 1891, and August 22, 1891. Besides this, they were ordered by the Richmond & Danville Railroad Company, and are a debt of that company. But they were ordered for supplies furnished to the Central Railroad & Banking Company of Georgia, property not included in the mortgage foreclosed in the main cause, over which the receivers had no control, which never came into their possession, from which they derived no revenue. The debt was incurred by the Richmond & Danville Railroad Company, to meet an obligation of the Georgia Pacific Railway Company, which obligation the Richmond & Danville Railroad Company had assumed. The doctrine has been established beyond controversy that holders of bonds of a railroad company, secured by mortgage, take them subject to this condition, that the earnings of the company shall first be applied to keeping the railroad property a going concern, and that debts incurred for labor or materials, needed to keep the mortgaged property a going concern, must be paid before the earnings can be applied to the mortgage debt. And if the mortgagees proceed on their security and obtain the appointment of a receiver, the earnings in the hands of the receiver must be applied to the liquidation of unpaid debts for operating expenses accrued within a limited period, due by a railroad suddenly deprived of its property, the payment of laborers, and of balances due to other roads, and debts of like character (Virginia & A. Coal Co. v. Central R. & Banking Co., 170 U. S. 367, 18 Sup. Ct. 657, 42 L. Ed. 1068), or, as expressed by Judge Morris, speaking for this court, in Bound v. South Carolina R. Co., 7 C. C. A. 322, 58 Fed. 473, 8 U. S. App. 472, "to those ordinary and current expenses of operating a railroad, contracted but a short time before a receivership, which by the sudden action of the court in appointing a receiver were left unpaid."

But, except as against this small and limited class of claims, the lien of the mortgage is paramount and must be protected. This debt of the Richmond & Danville Railroad Company, incurred in carrying out the obligation of another company, is surely not one of those ordinary and current expenses incurred in its operation which the mortgage creditor could expect and for which he must waive his lien. The claimant, as to these items, comes under the head of a general creditor, having no special equity on the earnings in the hands of the receivers. The claimant relied upon the personal credit of the Richmond & Danville Railroad, and its claim is in that category. In this respect this claim resembles that of the Ensign Manufacturing Company, decided at this term (117 Fed. 417), and our conclusion is the same with regard to both claims.

So much of the decree of the circuit court as allows payment of the two accounts of the Chapman Jack Company against the Central Railroad & Banking Company—that is to say, one of $84 and the other of $24, in all $108—is reversed. In all other respects, the decree below is affirmed.

Modified.